■ JOSEPH T. COMRAS, Appellant, v MONA L. COMRAS, Respondent. [600 NYS2d 61] —Order of the Supreme Court, New York County (Elliott Wilk, J.), entered on March 4, 1993,

which denied plaintiff's motion to direct defendant to withdraw her answer and counterclaims and proceed to an inquest or, alternatively, rescind the settlement agreement between them and granted defendant's cross-motion for certain injunctive relief, is unanimously modified on the law to the extent of denying plaintiff's motion with leave to renew after the passage of at least three months upon a showing that he has made diligent, good-faith efforts to obtain the required consents but that, despite his best endeavors, has been unable to obtain such consents and will be unable to do so in the foreseeable future, and otherwise affirmed, without costs or disbursements.

Plaintiff-husband commenced this action seeking a divorce and equitable distribution of the marital assets. Following discovery and negotiations that extended over a number of years, the parties entered into a stipulation of settlement, executed on May 15, 1992, which was intended to fully resolve all property claims between them, as well as plaintiff's demand for divorce. Accordingly, it was agreed that the husband would transfer assets and cash valued in excess of $5.5 million to defendant-wife, and, in exchange, she would convey certain property interests and withdraw her answer and counterclaims so that the matter could proceed to an inquest for an uncontested divorce.

It is significant to the present dispute that plaintiff is a general partner in a number of partnerships, with defendant holding limited partnership interests therein, that own Manhattan properties located at 11 Park Place, 21 West Street, 71 Broadway and One Park Avenue. Under the partnership agreements, both limited and general partners could be required to make additional cash contributions, and defendant has been advised since the subject settlement went into effect that her liability for such contributions could total some $500,000. Therefore, in order to relieve defendant from the necessity of any obligations arising out of her interest in the partnerships, the parties included in their settlement a provision that defendant's limited partnership interests would be transferred and assigned to plaintiff, who would assume all of the costs and indemnify defendant from all payments involved in those interests. Although the wife thereafter proceeded to fulfill her part of the agreement, the husband did not take the steps necessary to complete his own assignments. In that regard, among plaintiff's derelictions was his failure to promptly notify and obtain the consent of his general partners

to the transfer of the limited interest in at least one of the partnerships, Park Fee Associates.

Consequently, in a letter dated November 10, 1992, defendant received a cash call for $73,314 in connection with the property at One Park Avenue. She forwarded a copy of the communication to plaintiff, requesting that he make the payment pursuant to the indemnification clause in their settlement agreement. Not only did plaintiff fail to make the payment but his attorney informed defendant's counsel that since the partners were not getting along now, their consent could not be procured. Yet, despite plaintiff's own noncompliance, he moved to compel defendant to proceed to an inquest on his action for divorce or, alternatively, to rescind the settlement agreement. Defendant cross-moved for injunctive relief mandating that he secure his indemnification with a mortgage prior to establishing a homestead exemption in Florida. While plaintiff had owned property in Florida during the parties' marriage and continues to maintain a residence there, he was, defendant learned, engaged in purchasing another home in Florida at a cost of more than $3.5 million so as to create a homestead exemption under Florida law. It is her contention that his purpose is thereby to insulate that amount from creditors, an accusation which he denies. Plaintiff, however, does concede that he has ceased making maintenance payments to his wife unless she consents to an inquest on his divorce claim.

In denying plaintiff's motion and enjoining him from "taking any action that might frustrate the indemnification, including the establishment of a homestead in Florida, without first providing adequate security for the performance of his obligation to indemnify defendant", the Supreme Court concluded that his "failure to obtain the consent of the general partners has deprived defendant of the financial arrangement she agreed to and relied upon. If plaintiff establishes a Florida homestead and later files for bankruptcy under Florida's protective statutes, as defendant states he has threatened, the indemnification by itself will be meaningless. This is not what defendant bargained for when negotiating the agreement." On appeal, plaintiff urges that the court erred in enforcing the settlement stipulation and not permitting the matter to proceed to an inquest, improperly substituted its provision for collateral security for the agreement entered into by the parties and interfered with his constitutional right to travel and to the equal protection of the Florida laws.

As this Court recently explained in *Haskin v Mendler* (184

AD2d 372, 372-373), "[w]hile the plain meaning of the express language of a matrimonial contract generally controls its construction * * *, such a contract should not give one party an unfair or unreasonable advantage over the other * * *, and necessarily includes elements of good faith and fair dealing * * * Generally, no contract should be given a construction that would leave one party at the mercy of the other". Notwithstanding that the agreement herein does not expressly contain a requirement that plaintiff post an undertaking for his obligation to indemnify defendant or acquire third-party approval for the execution of necessary documents, its absence could well defeat his contractual responsibility. Indeed, considering plaintiff's failure to timely effectuate the transfer of defendant's partnership interests and his plan to purchase another expensive Florida property which would be sequestered under the homestead exemption, the Supreme Court correctly construed the agreement to mandate that plaintiff pledge security so as to avoid rendering meaningless his obligations thereunder. Yet, although the court appropriately declined to allow him the option of doing nothing to facilitate obtaining consent to the transfer of One Park Avenue, it apparently imposed upon him the absolute need to ensure that the general partners give their approval. A party, however, cannot be compelled to obtain the performance of a third party over whom he has no control (see, Shepherd v Whispering Pines, 188 AD2d 786). The husband should simply be required to make diligent, good-faith efforts to procure the consent of the parties.

The Supreme Court properly granted defendant's cross-motion for injunctive relief to preclude the possibility of plaintiff placing assets out of his wife's reach while there is an outstanding cash call against her. Certainly, the husband's assurances that he is presently endeavoring to resolve the problem are, without more, inadequate to protect defendant's interests. Finally, plaintiff's constitutional arguments are without merit. He is not being impeded in any way from traveling to or living in Florida, and, in fact, his current residence is in Florida. He is also not prevented from gaining the benefit of Florida's homestead provision, which creates an exemption rather than a specific property right (see, Weitzner v United States, 309 F2d 45, cert denied 372 US 913; Public Health Trust v Lopez, 531 So 2d 946 [Fla]). Plaintiff, an extremely wealthy man, cannot legitimately assert the right to create a $3.5 million asset shelter to guarantee him a place to live. We have considered plaintiff's remaining contentions and find

them to be without substance. Concur—Milonas, J. P., Ellerin, Ross, Asch and Kassal, JJ.